NEWMAN, Circuit Judge,
dissenting.
This appeal is from inter'partes review of United States Patent No. 7,712,683 (the '683 patent) under the America Invents Act of 2012. Review was requested by ScentAir Technologies, Inc., and proceeded to trial and decision of the Patent Trial and Appeal Board (PTAB), invalidating the patent. This appeal is directed to several aspects of the PTO’s and this court’s implementation of this new administrative proceeding.
The courts -are charged with assuring agency fidelity to law and to legislative purpose. The Supreme Court has stated:
Reviewing courts are not obliged to stand aside and rubberstamp their affir-mance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions.
N.L.R.B. v. Brown, 380 U.S. 278, 291-92, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965); see also Bowen v. Michigan Acad. of Family Physicians, 476 U.S. 667, 672 n. 3, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) (“The responsibility of enforcing the limits of statutory grants of authority is a judicial function; ... [w]ithout judicial review, statutory limits would be naught but empty words.”) (citation omitted).
Of primary concern is the PTO’s treatment of the statutory provisions for claim amendment in these post-grant proceedings. The panel majority holds that the PTAB properly refused entry of an amendment, although Prolitec complied with all of the statutory and regulatory requirements. The amendment would have narrowed the claims, potentially avoiding a dispositively adverse claim con- *1366 struetion. I respectfully dissent from my colleagues’ ratification of this and other departures from the governing statute and the underlying congressional policy.
A

The PTO erred in refusing to enter Prol-itec’s substitute claim 3

The America Invents Act authorizes limited claim amendment, as follows:
35 U.S.C. § 316(d)(1) In general. — During an inter partes review instituted under this chapter, the patent owner may file 1 motion to amend the patent in 1 or more of the following ways:
(A) Cancel any challenged patent claims.
(B) For each challenged claim, propose a reasonable number of substitute claims.
(3) Scope of claims. — An amendment under this subsection may not enlarge the scope of the claims of the patent or introduce new matter.
PTO regulations authorize denial of a claim amendment that complies with the statute, but only when:
(i) The amendment does not respond to a ground of unpatentability involved in the trial; or
(ii) The amendment seeks to enlarge the scope of the claims of the patent or introduce new subject matter.
37 C.F.R. § 42.121(a)(2). “Ground of un-patentability” in this regulation refers to the statutory basis of the petition for inter partes review, for the regulations require the petitioner to identify “[t]he specific statutory grounds under 35 U.S.C. §§ 102 or 103 on which the challenge to the claim is based and the patents or printed publications relied upon for each ground.” 37 C.F.R. § 42.104(b)(2).
Prolitec moved to amend by replacing claim 1 with claim 3, which replaced the term “mounted” with the term “permanently joined.” The PTAB refused to enter the amendment, and then invalidated claim 1 on the “broadest” interpretation of “mounted” to include other than permanent mounting. Only permanent affixation is described in the specification, and is emphasized as a distinction from Prolitec’s prior device, which is the closest prior art.
When a proposed amendment would resolve a dispositive aspect of claim breadth, refusal to enter the amendment is contrary to both the purpose and the text of the America Invents Act.
The PTO has intervened in this appeal to defend the PTAB’s refusal of the amendment. However, entry of a compliant amendment is of statutory right, and patentability of the amended claim is properly determined by the PTAB during the IPR trial, not for the first time at the Federal Circuit.
B

The PTO’s placement of the burden of proof for amended claims is contrary to statute

I start with the PTO’s treatment of the burden of proof, for if the PTO tribunal is to serve as a surrogate for the district courts’ determination of patent validity, the same decision-affecting procedural rules should apply in the PTAB as in the district court.
The America Invents Act places the burden of proof on the post-grant petitioner, and provides: *1367 That statutory prescription applies whether the “proposition of unpatentability” is for amended or unamended claims. However, the PTAB disregards this statutory requirement by placing on the patentee the burden of proving patentability for a proposed amended claim. The PTAB so held in Idle Free Systems, Inc. v. Bergstrom, Inc., 109 U.S.P.Q.2d 1443, 1459 (PTAB Jan. 7, 2014) (“The burden is not on the petitioner to show unpatentability [of amended claims], but is on the patent owner to show patentable distinction over the prior art of record and also prior art known to the patent owner.”) (citing Idle Free, Decision on Motion to Amend Claims, § 42.121 at 7, IPR2012-00027 (PTAB June 11, 2013), Paper No. 26) (emphasis omitted).
*1366 35 U.S.C. § 316(e) Evidentiary standards. — In a post-grant review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence.
*1367 The America Invents Act does not authorize or suggest such a shift in the statutory burden. The PTO, in its Intervenor’s brief, invokes the practice of district court litigation and argues that if the patentee files a motion, it bears the burden of establishing entitlement to grant of the motion. However, this generalization is inapplicable when there are explicit statutory burdens that set a different standard.
The Act requires the PTAB to analyze the patentability of “any new claim added under section 316(d),” 35 U.S.C. § 318(a), again reflecting the statutory directive that the new claim should be added, provided that it qualifies under the statute. The PTAB then determines patentability of the added claim in accordance with the statutory burdens. The statute places the burden of proving invalidity (unpatentability) on the petitioner. As explained by Senator Kyi, “inter partes reexamination is converted into an adjudicative proceeding in which the petitioner, rather than the Office, bears the burden of showing unpa-tentability.” 137 Cong. Rec. S1360, S1375 (daily ed. Mar. 8, 2011). The Act makes no distinction between original and amended claims in inter partes review.
My colleagues on this panel depart from the statute in removing from the petitioner the burden of showing unpatentability of amended claims.
C

The preponderance of the evidence is the statutory standard for PTAB validity decisions; judicial review should determine whether the PTAB correctly applied that standard

The PTAB invalidated Prolitec’s claims by applying the broadest reasonable construction standard, instead of determining the correct claim construction in accordance with the specification and the prosecution history. Prolitec argues that its claims, and particularly proposed substitute claim 3, are not invalid when given the correct construction. However, the PTAB reviewed the claims under the broadest reasonable construction standard, and this court reviewed the PTAB decision under the highly deferential substantial evidence standard. With deferential review an incorrect PTAB decision is less likely to be corrected on appeal, contrary to the purpose of the America Invents Act to achieve correct determinations of patentability.
The substantial evidence standard is inappropriate in this context. There is no requirement that every administrative decision on every subject must receive deferential review. The standard of review should be attuned to the circumstances. When the America Invents Act assigned to the PTAB the preponderance of the evidence standard for these post-grant procedures, it became inappropriate for the PTAB to give deference to the PTO’s prior ruling granting the patent. It also became inappropriate for the PTAB to use the district court’s clear and convincing evi *1368 dence standard. The America Invents Act explicitly states that the PTAB should apply the preponderance standard, illustrating the careful balance in the Act; it is the judicial responsibility to assure that this balance is preserved. 35 U.S.C. § 316(e) (requiring proof of unpatentability by a preponderance of the evidence).
Thus, our review of the PTAB’s decision must assure that the preponderance of the evidence standard as met. My colleagues err in applying the substantial evidence standard to America Invents Act post-grant appeals.
D
In the evolving state of PTAB practice, Prolitec is entitled to the benefít of PTO interpretations and changes in practice
Prolitec advises that two days after the PTO filed its Intervenor’s Brief supporting the PTAB’s refusal to accept substitute claim 3, the PTO - announced changes with respect to amendment entry. The Director’s Forum: A Blog from, USPTO’s Leadership: PTAB’s Quickr-Fixes for AIA Rules Are to Be Implemented Immediately, available at http://www.uspto.gov/blog^ director/entry/ptab_s_quickjBxes_for (Mar. 27, 2015), stated that
regarding motions to amend, we are contemplating proposed changes to emphasize that a motion for a substitutionary amendment will always be allowed to come before the Board for consideration (i.e., be “entered”), and for the amendment to result in the issuance (“patenting”) of amended claims, a patent owner will not be required to make a prior art representation as to the patentability of the narrowed amended claims beyond the art of record before the Office.
This indicates both a retreat from the PTAB’s ruling that Prolitec was required to show patentability over “any other prior art reference that also may teach the very limitation,” whether or not of record, PTAB Op. at 30, and an acknowledgement that motions to amend are to be entered as of right. However, the PTO imposed the prior rule on Prolitec, and its brief stated that “the Board did not abuse its discretion by requiring Prolitec to come forth with a showing of patentability of its proposed substitute claim over the prior art known to it....” PTO Br. 28. When this rule change was publicly announced, it seems unfair to punish Prolitec for noncompliance with a rule that had already been discarded by the PTO.
Prolitec was not only denied the benefit of the PTO’s change of position, but was also denied the right to amend, although this right was granted by the “quick-fix.” Prolitec’s motion met all of the requirements, and distinguished not only the references of record, but also the references cited by ScentAir and references “within the knowledge of Prolitec.” Motion to Amend at 14.
On this appeal, the PTO now concedes that “the patent owner complied with the requirements of rule 42.121.” PTO Br. 21. However, the PTO also argues that the proposed amendment was properly “den[ied] ... anyway because the patent owner did not adequately show that the new claims are patentable over the prior art in general.” Id. (citing Idle Free, 109 U.S.P.Q.2d at 1456-61). I emphasize “in general,” for such an open-ended expedient has no limits. Indeed, the PTO has also retreated from this position, as the panel majority has recognized.
The panel majority states that on July 15, 2015, the PTAB retreated from that position in MasterImage 3D, Inc. v. RealD Inc., IPR2015-00040, 2015 WL 4383224 (PTAB July 15, 2015). In Masterlmage 3D, the PTAB stated that “prior art of record ... refer[s] to: any material art in *1369 the prosecution history of the patent; ... of record in the current proceeding ...; and ... of record in any other proceeding before the Office involving the patent,” and that “prior art known to the patent owner ... should be understood as no more than the material prior art that Patent Owner makes of record in the current proceeding pursuant to its duty of candor and good faith to the Office under 37 C.F.R. § 42.11, in light of a Motion to Amend.” Id. at 2-3.
My colleagues state that “changes to which the dissent refers were memorialized in Masterlmage 3D.” Maj. Op. at 1364 n. I.[1] If so, the PTAB has an obligation to give Prolitec the benefit of that change, for the PTO states in its Intervenor’s Brief that this is the only remaining ground in support of the PTAB’s denial of the motion to amend.
I take note of fresh uncertainty concerning the right to amend, for on November 3, 2015 the following colloquy took place at the argument of another appeal in which the PTO intervened. I inquired of PTO counsel:
Court: So it is the position of the Office that ... a patent owner has a statutory right to an amendment?
PTO: The patent owner has a statutory right to file what is called a motion to amend ...
Court: You said to file a -motion to amend. Do they have the right to have the motion granted?
PTO: No, Your Honor.
Court: Or only the right to file it?
PTO: Only the right to file a motion.
Court: So there is no right to amend? PTO: No, Your honor.
Oral Argument, Synopsys, Inc. v. Mentor Graphics, Inc., No.2015-1516 (Argument transcript at 24:39-27:24, November 3, 2015, available at http://oralarguments. cafc.uscourts.gov/default.aspx?fl=2014-1516.mp3).
I assume that such inconsistency will be clarified. Meanwhile, however, Prolitec is entitled to the benefit of changes “memorialized” by the Board while this case was pending. Landgraf v. USI Film Prods., 511 U.S. 244, 264, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (a court must “apply the law in effect at the time it renders its decision”) (quoting Bradley v. Sch. Bd. of Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974)); R. Pierce, Jr., Administrative Law Treatise § 6.7 (“[Ajgencies with the power to adjudicate cases can engage in retroactive lawmaking by replicating the practice of courts ... [t]he Court has consistently upheld that practice.”).
In view of this error or uncertainty, we should remand to the PTAB for reconsideration of its denial of the amendment.
E

The PTAB’s claim construction requires judicial review for correctness as a matter of law, not deferential review as question of fact

The '683 invention is an improvement on Prolitec’s own prior device, which required *1370 opening the liquid reservoir to refill the container, a messy procedure subject to leaking and spills, inconsistent scent concentration, clogs, and cross-contamination. Prolitec states that the '683 device solved these problems by using disposable cartridges where the vacuum/suction created by the venturi effect permits sealed containers to be emptied efficiently by the dispersal mechanism, all while avoiding the mess.
The PTAB found anticipation by the Be-nalikhoudja reference, which is directed to Prolitec’s prior device. A finding of anticipation requires that the same invention was previously known and described, not that a claim can be construed so broadly and incorrectly as to embrace a prior art device. The device of the '683 patent is not shown in the prior art; it is not the same as the Benalikhoudja device.
Prolitec appeals the construction of three claim terms, stating that the constructions do not conform to the specification. Prolitec states that these terms were incorrectly broadened so as to reach subject matter that is not within the scope of correctly construed '683 claims.
1.
The PTAB construed the '683 claims as including a two-chambered system as in the prior art, although the specification and embodiments all show a three-chambered system and explain its advantages over the prior art’s two chambers. The PTAB, revising the '683 invention to eliminate the third chamber, stated that
claims 1 and 2 require an initial expansion chamber, a head space, and a second/secondary chamber that is secondary in reference to the initial expansion chamber, but not necessarily a separate, third chamber coming after the heads-pace.
PTAB Op. at 15 (quotations omitted). No reference supports the PTAB’s finding that the '683 device did not “necessarily” constitute a third chamber, and the prior art does not show a structure comparable to the head space in the '683 patent. Nonetheless, the PTAB and my colleagues on this panel find that Prolitec’s three-chamber device is “anticipated” by the pri- or art two-chamber device. The PTAB stated:
To the extent Patent Owner means the claims require a second/secondary chamber in addition to requiring a head space, we agree. But, to the extent that Patent Owner argues that the claims require some level of physical separation between the head space and second/secondary chamber, we disagree.
PTAB Op. at 19. This is not the law of anticipation. Anticipation requires that the same invention was previously known; it is apparent from the specification that the PTAB’s analysis is not correct.
2.
For the claim element “a diffusion head mounted to the reservoir,” the PTAB construed the term “mounted” to mean that the cartridge “may be reused through dis-assembly, refilling, and reassembly.” PTAB Op. at 13. The PTAB did not permit Prolitec to amend the claim to replace “mounted” with “permanently joined.”
The specification describes the diffusion head as “bonded” to the liquid reservoir, such as by “heat,” “ultrasonic welding,” “spin welding,” or “by use of ah adhesive.” '683 Patent, col. 13 11. 31-33. The permanence' of this attachment pervades the description in the patent. Every embodiment in the specification shows permanent attachment of the cartridge, which cannot be disassembled by the end user without destroying it. Prolitec’s expert testified that:
*1371 If one were to attempt to separate the diffusion head from the liquid reservoir, neither part would be able to be reused and the entire cartridge would be destroyed. Thus, the cartridge in the '683 patent is an integrated unit that cannot be disassembled without destroying the cartridge.
Decl. of Timothy Shedd, IPR2013-00179,-Prolitee Ex.2003, p. 32 (Dec. 13, 2013). The panel majority incorrectly attributes to the expert the position that the cartridge can be removably adhered, a theory that is contrary to the entirety of the specification and testimony.
The panel majority further agrees with the PTAB that the Prolitee cartridge is not a single-use cartridge, because the '683 patent suggests that used cartridges be returned to the factory “to have the cartridge disassembled, cleaned, any worn or damaged parts replaced, and then refilled and sealed for use.” '683 Patent, col. 11, 11. 9-13. Factory recycling is not contrary to a single-use cartridge in the hands of the consumer. This ruling is incorrect.
3.
The PTAB also misconstrued the '683 patent’s recitation of “second end of the conduit ... fixed in position with respect to the narrow end,” col. 16, 11. 12-15, as anticipated by the prior art refillable cartridge. This error again illustrates the incorrectness of the practice of construing these claims “broadly,” for this broad construction is not supported by either the specification or the prosecution history. Since post-grant procedures are conducted for issued patents, the claims should be construed correctly, as would a district court and as should the Federal Circuit. The PTAB, having construed the claims overly broadly, found them invalid, while depriving the patentee of the statutory right to amend.
The PTAB also erred in separately analyzing each incremental difference from the prior art, whereas it is the claimed combination as a whole whose obviousness must be determined. The PTAB, in its acknowledgement of Prolitec’s attempt to substitute narrowed claim 3, disposed of it on this improper analysis:
We understand that Patent Owner maintains that several limitations, which are common to issued claim 1 and proposed claim 3, provide patentable distinctions over the prior art. As we have already held claim 1 to be unpatentable, these limitations Cannot distinguish claim 3 over the prior art.
PTAB Op. at 30. This analysis fails the requirement of 35 U.S.C. § 103 that obviousness is determined on the invention as a whole. This is an error of law, and cannot be endorsed on a “substantial evidence” standard of review.

Conclusion

I support bringing PTAB expertise to bear in a post-grant review system. However, the purpose of post-grant review is not to stack the deck against the patentee, but to achieve a correct and reliable result — for innovative enterprise is founded on the support of a system of patents.
The legislative record shows that Congress was aware that the America Invents Act would apply to issued patents that had previously been examined by PTO procedures, and on which patentees may have relied for investment and commercial activity. Returning the patent to the granting agency, amid complaints that the agency too often granted invalid patents, was a long-debated recourse, intended to rehabilitate the innovation incentive. The America Invents Act reflects a careful ’balance *1372 of the various interests and needs — and it is the judicial obligation to assure that the administrative mechanisms are faithful to the legislative purpose. The court’s rulings today do not meet that obligation. I respectfully dissent.

. The panel majority misapplies the PTAB’s holding in Masterlmage 3D. First, this opinion is not “precedential” within the PTAB. See PTAB Standard Operating Procedures 2 (Revision 9), Publication of Opinions and Designation of Opinions as Precedential (2014). All other opinions (designated as Informative, Representative, or Routine) are “not binding authority.” Id. at 3-4. Idle Free was designated “Informative;” Masterlmage 3D has been placed in the newly created (Revision 9) category of "Representative,” and does not “memorialize” anything. The Board is not bound to follow Masterlmage 3D in any later case, nor is any practitioner before the Board able to rely on Masterlmage 3D as "providing guidance.” The PTO has made clear that it only binds itself through “Precedential” opinions. "Informative” decisions are not binding.